**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 8, 2018
Decided August 16, 2018

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-1021

| | |
|---|---|
| STEPHANIE D. WEST, <br>     *Plaintiff-Appellant,* <br><br> *v.* <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br>     *Defendant-Appellee.* | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. <br><br> No. 1:16-CV-424 <br><br> William C. Lee, <br> *Judge.* |

**O R D E R**

Stephanie West applied for supplemental security income, 42 U.S.C. § 1382c(a)(3), and child's insurance benefits (for herself, through her father), 42 U.S.C. § 423(d), alleging disability based on numerous mental and physical impairments. An administrative law judge ("ALJ") found that, despite her impairments, she could perform a limited range of light work. West argues that the ALJ failed to consider her impairments in combination. Because substantial evidence supports the ALJ's decision, we affirm the judgment.

West applied for disability benefits in October 2013, when she was 21 years old, based on bipolar disorder and a learning disability. She also suffers from chronic back and abdominal pain, migraines, asthma, obesity, anxiety, and attention deficit hyperactivity disorder, among other conditions.

During her hearing before the ALJ, West identified her chief complaints as chronic back pain and headaches. Her back pain dated back to adolescence, when a child whom she was babysitting jumped on her and ruptured four disks in her spine. The pain worsened around 2008, when she delivered her first child; it decreased around 2014, after she lost almost 100 pounds. As for West's migraine headaches, they sometimes have required visits to the emergency room.

At times, West has received pain relief from opioids and epidural-steroid injections in her back. In February 2013, her doctor temporarily rescinded her prescription for pain medication because blood tests suggested that she had not been taking the drug. In July, West told her doctor that she stopped her medications because she "found out a couple months ago that she was pregnant" and had also lost her insurance coverage. Without her medications West felt "tremendously better …. better than she ever ha[d]." She soon resumed taking opioids, though, and her pregnancy apparently did not result in a birth.

West's mental impairments also limit her functioning. She takes medications for anxiety and bipolar disorder. In 2010 she underwent several days of inpatient treatment after she experienced suicidal ideation. She was also a poor student, having attended special-education classes until she dropped out of school in eighth grade. She has failed the GED exam three times and the driver's license exam seven times.

A consultative psychologist, Wayne Von Bargen, examined West in connection with her application for benefits. After administering an intelligence test, Bargen assessed her an IQ of 78, placing her in the borderline range of intelligence and in the seventh percentile for her age. He opined that people with West's level of intellectual abilities can perform "unskilled or semiskilled occupations, involving concrete, relatively repetitive tasks." He added that although West would "usually" require supervision, "independent job functioning is possible."

A physician and two psychologists also opined about West's abilities based on their review of her medical records. The physician concluded that she had no exertional, postural, manipulative, visual, or communicative limitations. The two psychologists

concluded that West was mildly limited in her ability to maintain social functioning and maintain concentration, persistence, and pace. But they noted no severe impairments or episodes of decompensation, and they assessed no restrictions in West's activities of daily living.

At the hearing in June 2015, West, who weighed 165 pounds and stood 5'8" tall, was 7 months pregnant. She had been out of work since January 2015, when she had quit her full-time job as a waitress because her employer would not accommodate pregnancy-related restrictions that her doctor had imposed, i.e., she was not supposed to lift heavy tables. Before that she had worked part-time at a pizza restaurant but quit after three or four months because her back pain left her unable to lift heavy pizza dough out of a machine. She also worked "almost full-time" for less than two months in the drive-through window of a fast-food restaurant; she quit because she had moved and because "it was just too hot there to work." West said that the difficulties she experienced performing these jobs were "mostly physical."

Asked by the ALJ to estimate her abilities, West said that she could walk at least half a mile, stand for an hour, and lift ten pounds, albeit with pain. But she offered more modest estimates when questioned by her attorney: She estimated that there were days when she could walk no more than a block and stand for no more than five minutes. She added that during periods of stress it was "almost impossible" for her to concentrate.

A vocational expert testified about the number of jobs that someone with West's limitations could perform. The ALJ asked the VE to consider a claimant with West's age, education, and work history who (subject to limitations for certain extreme postures and work environments) had the physical capacity to perform light work and who had the mental capacity to perform "simple, repetitive tasks on a sustained basis," but could not perform "fast paced work or work requiring a regimented pace of production." The VE testified that such a person could work as a cashier, retail marker, dining-room attendant, or routing clerk. The VE added that the cashier or routing-clerk positions would still be available if the claimant needed to alternate between sitting and standing every half hour. And if the claimant retained the functional capacity to perform only sedentary work, she could still work as an addresser, telephone-order clerk, or tube operator.

The ALJ denied West's application for disability benefits. First, the ALJ determined that West appeared eligible for benefits for any period of disability through

February 2015, when she married. Then, applying the requisite five-step analysis, the ALJ determined that (Step 1) none of West's prior work amounted to substantial gainful activity; (Step 2) West's chronic back and abdominal pain, migraines, asthma, obesity (before her recent weight loss), bipolar disorder, anxiety, attention deficit hyperactivity disorder, and borderline intellectual functioning were severe impairments; (Step 3) none of those impairments equaled a listing; (Step 4) she retained the residual functional capacity to perform light work, subject to certain postural and environmental limitations, if it did not require complex instructions or a fast pace; and (Step 5) she could perform the jobs that the VE identified.

The Appeals Council denied West's request for review, and the district court upheld the ALJ's decision.

We struggle to discern from West's appellate submissions any coherent challenge to the ALJ's decision. As best we can make out, she seems mostly to fault the ALJ for failing to consider her impairments in combination. In particular, West says, the ALJ ignored certain evidence of her mental impairments. But this argument draws on little more than a selective reading of two psychological reports, one of which dates from when she was in fifth grade. West, citing that dated report, contends that the ALJ should have specifically discussed her unwillingness to ask for help and her problems with "visual-motor coordination," "spatial visualization," and "correctly reading printed words."

Even if we put aside the obvious problem that West's abilities when she was a fifth grader may not be representative of her abilities as an adult, West does not say (in her brief, or when asked, through her counsel at oral argument) what functional limitations the ALJ should have imposed to take further account of her mental impairments. And the ALJ seems to have erred on the side of caution in formulating West's residual functional capacity—Dr. Bargen opined that West was capable of semiskilled work and the two reviewing psychologists opined that she had no serious mental impairments, yet the ALJ limited her to unskilled work that did not require complex instructions or a fast pace. West, in response, highlights Dr. Bargen's observation that she would "usually" require supervision, while ignoring his conclusion that "independent job functioning is possible" nonetheless. In the absence of any medical opinion contradicting those of the four medical professionals who all concluded that West can work, we cannot say that the ALJ erred in relying on those opinions to deny West's application for benefits.

We have considered West's remaining arguments and none merit discussion.

AFFIRMED